**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

|  |  |
|---|---|
| **DARNETT OSBOURNE-NICKLE**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**TAMPA FAMILY HEALTH CENTERS, INC.**, a Florida corporation,<br><br>Defendant. | **CIVIL ACTION**<br><br>**Case No.  8:26-cv-1788**<br><br>**Judge:**<br><br>**Mag. Judge:** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, DARNETT OSBOURNE-NICKLE ("NICKLE" or "Plaintiff"), by and through undersigned counsel, and states the following for her Complaint:

### CAUSES OF ACTION

1. This is an action brought under Title VII of the Civil Rights Act of 1964 (Title VII) and the Florida Civil Rights Act of 1992 (FCRA) for (1) sex harassment in violation of Title VII, (2) national origin discrimination in violation of Title VII, (3) retaliation in violation of Title VII, (4) sex harassment in violation of the FCRA, (5) national origin discrimination in violation of the FCRA, and (6) retaliation in violation of the FCRA.

1

## PARTIES

2. The Plaintiff, DARNETT OSBOURNE-NICKLE ("NICKLE"), is an individual who at all material times resided in Hillsborough County, Florida, and who worked for the Defendant in Hillsborough County, Florida.

3. Defendant, TAMPA FAMILY HEALTH CENTERS, INC. ("Defendant" or "TFHC"), is a Florida not for profit corporation with its principal place of business at 302 W. Fletcher Avenue, Tampa, Florida 33612. The Defendant was NICKLE's employer. At all material times, the Defendant employed greater than fifteen (15) employees.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of this matter under 28 U.S.C. § 1331 and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the United States District Court for the Middle District of Florida because some or all of the events giving rise to Plaintiff's claims occurred in Hillsborough County, Florida, which is within the Middle District of Florida. Venue is proper in the Tampa Division since Hillsborough County is within the Tampa Division.

6. NICKLE received her Notice of Right to Sue from the United States Equal Employment Opportunity Commission ("EEOC") on or about March 27, 2026, and the instant Complaint is filed within the time frame required under the

2

law. (A true and accurate copy of the Notice of Right to Sue is attached as Exhibit 1.)

## **GENERAL ALLEGATIONS**

7. NICKLE was employed by the Defendant as a Clinical Nurse Manager and began her employment with the Defendant on or about June 30, 2024.

8. NICKLE performed all of the essential functions of her position in a professional manner, receiving positive performance reviews throughout her tenure with no negative feedback.

9. NICKLE is a female of Jamaican national origin, born January 23, 1970.

10. On or about August 21, 2025, NICKLE received a phone call from Operations Manager Jimmy Barnes ("Barnes") regarding supply inventory numbers she had provided. During this call, Barnes made a vulgar and sexually hostile statement, saying: "Do you expect the employees to use their hands to wipe their butt?"

11. NICKLE responded to Barnes's hostile comment by stating: "First of all, respect is due where respect is given. Please do not speak to me like that." NICKLE also informed Barnes that, due to his continued disrespectful conduct, she no longer felt comfortable communicating with him alone and would require a third person to be present during any future interactions.

12. Later that same day, August 21, 2025, at approximately 3:39 PM, NICKLE sent a formal written complaint to her supervisors, Maria Brockway

and Janine Lehman-Spies, reporting Barnes's unprofessional and sexually hostile conduct and requesting that the matter be addressed appropriately.

13. Brockway and Lehman-Spies acknowledged NICKLE's complaint, apologized for her experience, and told her the matter would be addressed. They forwarded the complaint to Human Resources.

14. The following day, August 22, 2025, NICKLE was called to a meeting at Defendant's corporate office with Human Resources. Rather than addressing NICKLE's complaint about Barnes's sexual harassment, the Defendant accused NICKLE of insubordination on an entirely unrelated matter and placed her on administrative leave.

15. While NICKLE was in the meeting on August 22, 2025 and unable to respond, a different Defendant representative went to NICKLE's clinic and told her entire staff that NICKLE was "no longer employed" and could only return "as a patient." This false statement was made before any investigation was conducted.

16. NICKLE never received any communication from Defendant regarding any investigation into her complaint about Barnes, or any investigation related to the insubordination accusation used to place her on administrative leave.

17. Barnes has relatives employed within Defendant's Human Resources department, which created a conflict of interest and corrupted the Defendant's purported investigative process.

18. While NICKLE was on previously approved paid time off following her placement on administrative leave, she received COBRA continuation coverage documents indicating that her employment had ended on August 25, 2025. She received no official termination letter, text message, or email from the Defendant.

19. At all material times, Defendant was aware that NICKLE is a female of Jamaican national origin, and was aware of NICKLE's protected complaint regarding Barnes's sexually hostile and harassing conduct.

## COUNT I — VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 — SEX HARASSMENT / HOSTILE WORK ENVIRONMENT

20. Plaintiff incorporates by reference Paragraphs 1–19 of this Complaint as though fully set forth below.

21. At all material times, NICKLE was an employee, and the Defendant was her employer covered by and within the meaning of Title VII.

22. NICKLE was qualified for the position she held with Defendant.

23. NICKLE is a female and is a member of the class of persons protected under Title VII's prohibition against sex-based harassment.

24. During her employment with the Defendant, NICKLE was subjected to unwelcome sexually hostile conduct by Barnes, a male Operations Manager with authority over aspects of NICKLE's work, who directed at her a vulgar,

sexually degrading remark while questioning her job performance: "Do you expect the employees to use their hands to wipe their butt?"

25. Barnes's conduct was severe and pervasive enough to alter the conditions of NICKLE's employment and create an abusive working environment that a reasonable person in NICKLE's position would find hostile. NICKLE found the conduct subjectively offensive, as evidenced by her immediate objection to Barnes and her formal written complaint to supervisors the same day.

26. The Defendant was on actual notice of the sexually hostile work environment no later than August 21, 2025, when NICKLE submitted her formal written complaint to Brockway and Lehman-Spies, who in turn forwarded the complaint to Human Resources.

27. The Defendant failed to take prompt and effective remedial action. Instead of investigating NICKLE's complaint or addressing Barnes's conduct, the Defendant summoned NICKLE to a Human Resources meeting the next day, accused her of unrelated insubordination, placed her on administrative leave, and ultimately discharged her.

28. The acts, failures to act, practices, and policies of Defendant set forth above constitute sex harassment and a hostile work environment in violation of Title VII.

29. As a direct and proximate result of the violations of Title VII, NICKLE has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

30. As a direct and proximate result of Defendant's actions, NICKLE has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

31. NICKLE has exhausted her administrative remedies and this count is timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had she maintained her position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv. Punitive damages;

v. Reasonable attorney's fees plus costs;

vi. Compensatory damages; and

vii. Such other relief as this Court shall deem appropriate.

## COUNT II — VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 — NATIONAL ORIGIN DISCRIMINATION

32. Plaintiff incorporates by reference Paragraphs 1–19 of this Complaint as though fully set forth below.

33. At all material times, NICKLE was an employee, and the Defendant was her employer covered by and within the meaning of Title VII.

34. NICKLE was qualified for the position she held with Defendant.

35. NICKLE is of Jamaican national origin and is a member of the class of persons protected under Title VII's prohibition against national origin discrimination.

36. At all material times, Defendant was aware of NICKLE's Jamaican national origin.

37. The Defendant subjected NICKLE to adverse employment actions — including placement on administrative leave, the public humiliation of having her termination falsely announced to her clinic staff, and her ultimate discharge — that were motivated in whole or in part by NICKLE's Jamaican national origin.

38. NICKLE was treated less favorably than similarly situated employees who are not of Jamaican national origin with respect to the terms, conditions, and privileges of her employment, including but not limited to her placement on administrative leave and her ultimate discharge.

39. The acts, failures to act, practices, and policies of Defendant set forth above constitute national origin discrimination in violation of Title VII.

40. As a direct and proximate result of the violations of Title VII, NICKLE has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

41. As a direct and proximate result of Defendant's actions, NICKLE has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

42. NICKLE has exhausted her administrative remedies and this count is timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had she maintained her

position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv. Punitive damages;

v. Reasonable attorney's fees plus costs;

vi. Compensatory damages; and

vii. Such other relief as this Court shall deem appropriate.

## COUNT III — VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 — RETALIATION

43. Plaintiff incorporates by reference Paragraphs 1–19 of this Complaint as though fully set forth below.

44. At all material times, NICKLE was an employee, and the Defendant was her employer covered by and within the meaning of Title VII.

45. NICKLE was qualified for the position she held with Defendant.

46. On August 21, 2025, NICKLE engaged in protected activity under Title VII by formally complaining to Defendant's management about Barnes's sexually hostile and harassing conduct during her employment, which she reasonably believed violated Title VII.

10

47. NICKLE's opposition to the sexually hostile work environment created by Barnes constitutes protected activity under Title VII because NICKLE opposed practices that she reasonably believed violated Title VII.

48. Rather than addressing NICKLE's complaint, Defendant retaliated against her the very next day — August 22, 2025 — by summoning her to a Human Resources meeting, accusing her of insubordination on an entirely unrelated matter, placing her on administrative leave, and simultaneously sending a representative to NICKLE's clinic to falsely announce to her entire staff that NICKLE was "no longer employed." NICKLE's employment was subsequently terminated effective August 25, 2025.

49. The temporal proximity between NICKLE's protected complaint on August 21, 2025 and the adverse actions taken against her beginning August 22, 2025 — the very next day — demonstrates that her protected activity was the proximate cause of Defendant's adverse employment actions against her.

50. The acts, failures to act, practices, and policies of Defendant set forth above constitute retaliation in violation of Title VII.

51. As a direct and proximate result of the violations of Title VII, NICKLE has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

52. As a direct and proximate result of Defendant's actions, NICKLE has suffered damages, including but not limited to, a loss of employment

opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

53. NICKLE has exhausted her administrative remedies and this count is timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had she maintained her position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv. Punitive damages;

v. Reasonable attorney's fees plus costs;

vi. Compensatory damages; and

vii. Such other relief as this Court shall deem appropriate.

## COUNT IV — VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992 — SEX HARASSMENT / HOSTILE WORK ENVIRONMENT

54. Plaintiff incorporates by reference Paragraphs 1–19 of this Complaint as though fully set forth below.

55. At all material times, NICKLE was an employee, and the Defendant was her employer covered by and within the meaning of the FCRA.

56. NICKLE was qualified for the position she held with Defendant.

57. NICKLE is a female and is a member of the class of persons protected under the FCRA's prohibition against sex-based harassment.

58. During her employment with the Defendant, NICKLE was subjected to unwelcome sexually hostile conduct by Barnes, a male Operations Manager with authority over aspects of NICKLE's work, who directed at her a vulgar, sexually degrading remark while questioning her job performance: "Do you expect the employees to use their hands to wipe their butt?"

59. Barnes's conduct was severe and pervasive enough to alter the conditions of NICKLE's employment and create an abusive working environment that a reasonable person in NICKLE's position would find hostile. NICKLE found the conduct subjectively offensive, as evidenced by her immediate objection to Barnes and her formal written complaint to supervisors the same day.

60. The Defendant was on actual notice of the sexually hostile work environment no later than August 21, 2025, when NICKLE submitted her

13

formal written complaint to Brockway and Lehman-Spies, who in turn forwarded the complaint to Human Resources.

61. The Defendant failed to take prompt and effective remedial action. Instead of investigating NICKLE's complaint or addressing Barnes's conduct, the Defendant summoned NICKLE to a Human Resources meeting the next day, accused her of unrelated insubordination, placed her on administrative leave, and ultimately discharged her.

62. The acts, failures to act, practices, and policies of Defendant set forth above constitute sex harassment and a hostile work environment in violation of the FCRA.

63. As a direct and proximate result of the violations of the FCRA, NICKLE has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

64. As a direct and proximate result of Defendant's actions, NICKLE has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

65. NICKLE has exhausted her administrative remedies and this count is timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had she maintained her position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv. Punitive damages;

v. Reasonable attorney's fees plus costs;

vi. Compensatory damages; and

vii. Such other relief as this Court shall deem appropriate.

## COUNT V — VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992 — NATIONAL ORIGIN DISCRIMINATION

66. Plaintiff incorporates by reference Paragraphs 1–19 of this Complaint as though fully set forth below.

67. At all material times, NICKLE was an employee, and the Defendant was her employer covered by and within the meaning of the FCRA.

68. NICKLE was qualified for the position she held with Defendant.

15

69. NICKLE is of Jamaican national origin and is a member of the class of persons protected under the FCRA's prohibition against national origin discrimination.

70. At all material times, Defendant was aware of NICKLE's Jamaican national origin.

71. The Defendant subjected NICKLE to adverse employment actions — including placement on administrative leave, the public humiliation of having her termination falsely announced to her clinic staff, and her ultimate discharge — that were motivated in whole or in part by NICKLE's Jamaican national origin.

72. NICKLE was treated less favorably than similarly situated employees who are not of Jamaican national origin with respect to the terms, conditions, and privileges of her employment, including but not limited to her placement on administrative leave and her ultimate discharge.

73. The acts, failures to act, practices, and policies of Defendant set forth above constitute national origin discrimination in violation of the FCRA.

74. As a direct and proximate result of the violations of the FCRA, NICKLE has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

75. As a direct and proximate result of Defendant's actions, NICKLE has suffered damages, including but not limited to, a loss of employment

16

opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

76. NICKLE has exhausted her administrative remedies and this count is timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had she maintained her position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv. Punitive damages;

v. Reasonable attorney's fees plus costs;

vi. Compensatory damages; and

vii. Such other relief as this Court shall deem appropriate.

## COUNT VI — VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992 — RETALIATION

77. Plaintiff incorporates by reference Paragraphs 1–19 of this Complaint as though fully set forth below.

78. At all material times, NICKLE was an employee, and the Defendant was her employer covered by and within the meaning of the FCRA.

79. NICKLE was qualified for the position she held with Defendant.

80. On August 21, 2025, NICKLE engaged in protected activity under the FCRA by formally complaining to Defendant's management about Barnes's sexually hostile and harassing conduct during her employment, which she reasonably believed violated the FCRA.

81. NICKLE's opposition to the sexually hostile work environment created by Barnes constitutes protected activity under the FCRA because NICKLE opposed practices that she reasonably believed violated the FCRA.

82. Rather than addressing NICKLE's complaint, Defendant retaliated against her the very next day — August 22, 2025 — by summoning her to a Human Resources meeting, accusing her of insubordination on an entirely unrelated matter, placing her on administrative leave, and simultaneously sending a representative to NICKLE's clinic to falsely announce to her entire staff that NICKLE was "no longer employed." NICKLE's employment was subsequently terminated effective August 25, 2025.

83. The temporal proximity between NICKLE's protected complaint on August 21, 2025 and the adverse actions taken against her beginning August

22, 2025 — the very next day — demonstrates that her protected activity was the proximate cause of Defendant's adverse employment actions against her.

84. The acts, failures to act, practices, and policies of Defendant set forth above constitute retaliation in violation of the FCRA.

85. As a direct and proximate result of the violations of the FCRA, NICKLE has lost all of the benefits and privileges of her employment and has been substantially and significantly injured in her career path.

86. As a direct and proximate result of Defendant's actions, NICKLE has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

87. NICKLE has exhausted her administrative remedies and this count is timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had she maintained her position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

19

ii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv. Punitive damages;

v. Reasonable attorney's fees plus costs;

vi. Compensatory damages; and

vii. Such other relief as this Court shall deem appropriate.

## **DEMAND FOR JURY TRIAL**

NOW COMES the Plaintiff, DARNETT OSBOURNE-NICKLE, by and through her undersigned attorneys, and demands a jury trial under Federal Rule of Civil Procedure 38 on all issues triable of right by a jury in this action.

Respectfully submitted,

Dated: June 18, 2026    **s/ Benjamin H. Yormak_____**
Benjamin H. Yormak
Florida Bar Number 71272
Lead Counsel for Plaintiff
YORMAK EMPLOYMENT & DISABILITY LAW
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com

20